Troutman Pepper Hamilton Sanders LLP
875 Third Avenue
New York, New York 10022

troutman.com

**Bennet J. Moskowitz**
bennet.moskowitz@troutman.com

February 4, 2022

**VIA FEDEX**

Hon. P. Kevin Castel
United States District Court
for the Southern District of New York
500 Pearl Street
New York, NY 10007

**Re: Case No. 1:21-cv-09597: Request for Leave to File Motion to Dismiss or Transfer**

Dear Judge Castel:

We represent defendants Julie Torres Art, LLC and Julie Torres (together, "Ms. Torres") in the referenced action. Pursuant to Rule 3.A of the Court's Individual Practices in Civil Cases, we write in anticipation of filing a motion to dismiss the complaint (Doc. 1 ("Compl.")) filed by Plaintiff Creative Photographers, Inc. under Fed. R. Civ. P. 12(b)(6), or in the alternative to transfer this action to the Northern District of Georgia under 28 U.S.C. § 1404. The next Court conference in this case is scheduled for February 25, 2022 at 11:30 a.m.

Plaintiff alleges that it is a commercial photography agency representing photographer Ruvén Afanador ("Afanador") for editorial and commercial licensing purposes. Compl. ¶ 3. Plaintiff contends that Afanador took a black-and-white portrait photograph of Supreme Court Justice Ruth Bader Ginsburg (the "Asserted Work") and describes key distinctive features of the portrait as including the "silhouette of Justice Ginsburg, signature collar of her robe, fold of her hands, and most importantly her scholarly gaze into the camera." *Id.* ¶ 10. Afanador is not a party to this case, though Plaintiff alleges that it holds, either as owner or exclusive licensee, some rights in the Asserted Work. *See, e.g., id.* ¶¶ 9, 12, 21, 23, 36,

Ms. Torres is a mixed-media artist residing in the state of Georgia against whom Plaintiff has brought a copyright claim alleging infringement of the Asserted Work. *Id.* ¶¶ 6, 11. Ms. Torres' works of art are of such creative renown that they have been displayed in The Metropolitan Museum of Art. *Id.* ¶ 15. Plaintiff claims vaguely the Asserted Work and "all the essential and distinctive elements" thereof are included in certain of Ms. Torres' "screenprints, mixed media works, and limited edition prints" (hereafter, the "Accused Works"). *Id.* ¶¶ 10, 38. Attached as **Exhibit A** is a representative Accused Work from Exhibit 2 to Plaintiff's Complaint. Although difficult to see as provided in the Complaint, a close observation reveals that the Accused Works are intricate weavings of strips of paper with text of quotes from Justice Ginsburg. *See* Ex. A.

The grounds for Ms. Torres' proposed motion are as follows:

## I. Plaintiff fails to allege facts showing standing to sue as a licensee or owner.

Only "(1) owners of copyrights, and (2) persons who have been granted exclusive licenses by owners of copyrights" have standing to sue for copyright infringement. *Eden Toys, Inc. v. Florelee Undergarment Co.*, 697 F.2d 27, 32 (2d Cir. 1982). At best, Plaintiff is non-committal on the nature of its own rights in the Asserted Work.[1] Plaintiff has not pleaded it is a co-author or the existence of an assignment of ownership in the Asserted Work from Afanador. 17 U.S.C. § 201(a) (copyright "vests initially in the author or authors of the work"). Thus, Plaintiff has not plausibly pleaded ownership of the Asserted Work. The Complaint also pleads in effect that Plaintiff is not an exclusive licensee. Plaintiff alleges Ms. Torres could have licensed the Asserted Work from **either** Plaintiff **or** Afanador. Compl. ¶ 9. Thus, Plaintiff's alleged license would not convey exclusive rights to "reproduce and distribute" the work because Afanador retains the same right.[2] The Complaint alleges elsewhere that Afanador has the "ability to license Plaintiff's copyrighted work." Compl. ¶ 12. Split rights are inconsistent with the exclusivity Plaintiff needs for standing to assert copyright infringement in the absence of ownership. *John Wiley & Sons*, 882 F.3d at 410.

Assuming *arguendo* that Plaintiff is an exclusive licensee, the Complaint still fails to plausibly allege even superficial facts to support Plaintiff's standing.[3] If the claims accrued prior to the alleged license, and the license did not convey express rights to bring suit therefor, Plaintiff lacks standing. *Getty Images*, 797 F. Supp. 2d at 431. The Complaint provides no date for the alleged license relative to claim accrual and no allegation that the license conveyed rights to prior accruing claims. Plaintiff's contradictions about its legal claim to the Asserted Work show it has not proffered, and/or is not in possession of, facts to plausibly support ownership and standing or determined if Afanador is a necessary party. The case should be dismissed as a result.

## II. Defendants' works are transformative fair use as a matter of law.

Ms. Torres' works are also a transformative fair use of the Asserted Work that cannot be an infringement. The Court may properly decide fair use on a motion to dismiss where, as here, "the only two pieces of evidence needed to decide the question of fair use" are "the original version" and the allegedly infringing version. *Cariou v. Prince*, 714 F.3d 694, 707 (2d Cir. 2013).

---

[1] Plaintiff claims ambiguously that it is **either** "the copyright owner **or** licensee" of the Asserted Work. Compl. ¶ 36 (emphasis added). In further contradiction, Plaintiff claims it is the "exclusive licensee" of the work (*id.* ¶ 23) **and** that both Plaintiff and Afanador were owners of the Work at all times (*id.* ¶ 21). Plaintiff either owns the work through assignment or licenses it from Afanador as owner (or neither), but not both.

[2] Exclusive licensee rights are "superior even to copyright owners' rights—to use the [Asserted Work] in a manner as specified by the license agreement, and may exclude others entirely . . ." *John Wiley & Sons, Inc. v. DRK Photo*, 882 F.3d 394, 410 (2d Cir. 2018) (quotation omitted).

[3] If asserting exclusive license, Plaintiff must show said license conveying rights to bring infringement claims existed: "(a) at the time of the copyright infringement; or (b) after the time of the copyright infringement, but included, explicitly, an exclusive right to bring the claims accrued prior to the date of the agreement." *Getty Images (US) Inc. v. Advernet, Inc.*, 797 F. Supp. 2d 399, 431 (S.D.N.Y. 2011).

Fair use is a complete defense to copyright infringement. *See* 17 U.S.C. § 107. The Copyright Act lists four factors that a court must consider when analyzing fair use: "(1) the purpose and character of the use; (2) the nature of the copyrighted work; (3) the amount and substantiality of the portion used; and (4) the effect of the use on the market for the original." *Id.* Courts must consider all factors but "defendants… need not establish that each of the factors set forth in § 107 weigh in their favor." *Swatch Grp. Mgmt. Servs. v. Bloomberg L.P.*, 756 F.3d 73, 81 (2d Cir. 2014) (quotation omitted). For the reasons below, the fair use factors are dispositive in Ms. Torres' favor.

The first factor, the purpose and character of the secondary work, is "[t]he heart" of fair use.[4] *Cariou*, 714 F.3d at 705 (quotation omitted). "[T]he 'most important' consideration under the first factor is the 'transformative' nature of the work at issue." *Andy Warhol Found. for the Visual Arts, Inc. v. Goldsmith*, 382 F. Supp. 3d 312, 325 (S.D.N.Y. 2019) (quotation omitted). [5] A work is "transformative" if it does not "merely supersede[ ] the objects of the original creation" but "adds something new, with a further purpose or different character, altering the first with new expression, meaning or message[.]" *Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569, 579 (1994) (citations omitted). Ordinary observers would instantly identify that the Accused Works convey the antithesis of what Plaintiff alleges is distinctive in the Asserted Work. "[M]ost importantly" the Accused Works **reject** the "scholarly" feeling to which Plaintiff ascribes primary significance and replaces it with wild, rebellious, casual, scattered, neon colored, animal printed, contemporary, light and ebullient features—an obvious commentary[6] that Justice Ginsburg exists beyond the traditional stoic legislator captured by Afanador. The Accused Works "have a different character, give [Afanador's] photographs a new expression, and employ new aesthetics with creative and communicative results distinct from [Afanador's]." Ms. Torres "has not presented the same material as [Affanador] in a different manner, but instead has 'add[ed] something new' and presented images with a fundamentally different aesthetic." *Cariou*, 714 F.3d at 708.

The second factor, the nature of the copyrighted work, asks if the copyrighted work is (1) expressive or creative versus factual or informational and (2) unpublished versus published. *Cariou*, 714 F.3d at 709-10. Copyright protections apply more broadly to creative and unpublished works. The Asserted Work is photography ordinarily considered "creative," though it is a traditional portrait of historical meaning, and there is no claim Afanador contributed to the scene of Justice Ginsberg as the subject.[7] The Asserted Work was also published in 2009, another fact in Ms.

---

[4] "[T]he other three factors are much less important." *Keeling v. Hars*, 809 F.3d 43, 53 (2d Cir. 2015) (quotation omitted) (noting "indeed, some may not be relevant at all").

[5] The Second Circuit's opinion on this case, *Andy Warhol Found. for the Visual Arts, Inc. v. Goldsmith*, 11 F.4th 26 (2d Cir. 2021), remains on appeal to the Supreme Court but does not foreclose Ms. Torres' motion. The facts supporting fair use here much more closely resemble *Cairou* than those in *Warhol*, where the only real changes to the copyrighted work were in color and contrast.

[6] "[T]here is a strong presumption that factor one favors the defendant if the allegedly infringing work fits the description of uses described in § 107," such as criticism or commentary. *NXIVM Corp. v. Ross Inst.*, 364 F.3d 471, 477 (2d Cir. 2004) (quotation omitted).

[7] *See Fioranelli v. CBS Broad. Inc.*, No. 15-CV-0952, 2021 U.S. Dist. LEXIS 145311, at *99-102 (S.D.N.Y. July 28, 2021).

Torres' favor. *Id.* This factor, though, rarely plays "a significant role in the determination of a fair use dispute." *Authors Guild v. Google, Inc.*, 804 F.3d 202, 220 (2d Cir. 2015).

The third fair use factor concerns "the amount and substantiality of the portion used in relation to the copyrighted work as a whole." 17 U.S.C. § 107(3). Courts consider "whether the quantity and value of the materials used are reasonable in relation to the purpose of the copying." *Cariou*, 714 F.3d at 710 (alteration and quotation omitted). When the secondary use is transformative, it "must be [permitted] to conjure up at least enough of the original to fulfill its transformative purpose." *Id*. (quotation omitted). Here, the vast majority of the Accused Works are Ms. Torres' artistic weavings, colors, patterns, text, and the like. What remains of the Asserted Work is enough to convey that the figure is Justice Ginsburg in a formal setting to fulfill the transformative purpose of juxtaposing her with elements directly contradictory to Afanador's purpose. Where Afanador claims a "scholarly" impression, Ms. Torres conveys the opposite. The other allegedly distinctive elements of a "silhouette" pose, Justice Ginsburg's own decision to wear her "signature" collar, and that her hands are visible in her lap while seated, are not copyrightable,[8] nor does the Complaint assert Afanador bore creative responsibility for them.

The fourth factor concerns "the effect of the use upon the potential market for or value of the copyrighted work." 17 U.S.C. § 107(4). The issue "is not whether the secondary use suppresses or even destroys the market for the original work or its potential derivatives," but whether it "usurps the market of the original work." *Cariou*, 714 F.3d at 708. Usurpation occurs when "the infringer's target audience and the nature of the infringing content is the same as the original[,]" *Cariou*, 714 F.3d at 709, and competes "so as to deprive the rights holder of significant revenues" because purchasers may substitute the copy for the original. *Google, Inc.*, 804 F.3d at 223. Here, Ms. Torres' transformative use does not usurp the original work's market. Plaintiff does editorial and commercial photography licensing. Compl. ¶ 3. There is no explanation as to how Ms. Torres' sales of vibrant, mixed-media fine art that Plaintiff claims command $12,000 per piece (*id.* ¶ 11), would impact—let alone usurp—Plaintiff's licensing markets for a black-and-white portrait photograph. *See, e.g.*, *Estate of Smith v. Graham*, 799 F. App'x 36, 39 (2d Cir. 2020) (secondary use for hip-hop song appeals to different audience than original's jazz audience). There is also no claim Plaintiff would ever develop uses of the Asserted Work "in the vein of [Ms. Torres'] artworks." *Cariou*, 714 F.3d at 709. The fourth factor therefore also supports fair use.

## III. The Court should transfer the case to the Northern District of Georgia.

Venue transfer to the Northern District of Georgia (Atlanta Division), is warranted under 28 U.S.C. § 1404(a). The Court has wide latitude to transfer venue. *In re Cuyahoga Equip. Corp.*, 980 F.2d 110, 117 (2d Cir. 1992) (citation omitted). "[A] motion to transfer venue requires a two-part inquiry: first, "whether the action to be transferred 'might have been brought' in the transferee court"; and second, whether "considering the 'convenience of parties and witnesses,' and the 'interest of justice,' a transfer is appropriate."" *Fuji Photo Film Co. v. Lexar Media, Inc.*, 415 F. Supp. 2d 370, 373 (S.D.N.Y. 2006). The answer to the first inquiry is yes. Venue in a copyright

[8] *Bill Diodato Photography, LLC v. Kate Spade, LLC*, 388 F. Supp. 2d 382, 392-94 (S.D.N.Y. 2005).

troutman pepper

case is proper in "the district in which the defendant or his agent resides or may be found." 28 U.S.C. § 1400(a). Because Ms. Torres resides in the Northern District of Georgia, venue there is proper. As to the second inquiry, the nine factors weighed in the Second Circuit overwhelmingly favor transfer. *Reliance Ins. Co. v. Six Star, Inc.*, 155 F. Supp. 2d 49, 56-57 (S.D.N.Y. 2001).

As to witness convenience (**Factor #1**), in a copyright action, the "most critical witnesses 'may be those officers and employees who were involved in . . .sale of the [allegedly] infringing products.'" *AEC One Stop Grp., Inc. v. CD Listening Bar, Inc.*, 326 F. Supp. 2d 525, 529 (S.D.N.Y. 2004). Here, the witnesses are by far in or near Atlanta, not New York.[9] As to party convenience (**Factor #2**), Ms. Torres is an up and coming artist with a startup business still establishing herself in the art industry and lacks the means to defend the action in New York.[10] Ms. Torres also just delivered a newborn son, Jonah, within the last two weeks, and she is primarily responsible for his care. As to the location of documents and easy access to proof (**Factor #3**) and locus of operative facts (**Factor #4**), these decidedly favor transfer as the Accused Works were created in Georgia, where most documents and original prints are. *Smart v. Good*, 21 F. Supp. 2d 309, 316 (S.D.N.Y. 1998) (citation omitted). Because the key witnesses largely live in Georgia, this Court's ability to compel their participation is limited (**Factor # 5**). *See Romano v. Banc of Am. Ins. Servs.*, 528 F. Supp. 2d 127, 133 (E.D.N.Y. 2007). The relative means of the parties (**Factor #6**) also supports transfer, again because Ms. Torres lacks finances and Plaintiff is a company. The forum's familiarity with governing law (**Factor #7**) is unimportant where, as here, the case turns on federal copyright law with which both forums are familiar. Plaintiff's choice of forum (**Factor #8**) merits less deference "where the connection between the case and the chosen forum is minimal." *Chiste v. Hotels.com L.P.*, 756 F. Supp. 2d 382, 401 (S.D.N.Y. 2010). Such is the case here, where the facts center around Georgia conduct. Last, trial efficiency and interests of justice (**Factor #9**) favor transfer because most relevant information is in Georgia, Ms. Torres has yet to answer the Complaint, there has been no Case Management Plan or Initial Pretrial Conference, and federal judiciary statistical data shows this case can be adjudicated to finality more quicky in Georgia (for copyright cases, approx. 2-2.5 years in N.D. Ga. vs. approx. 3-4 years in S.D.N.Y.).

Pursuant to the Court's Individual Practices, we understand the filing of this letter has stayed Ms. Torres' time to answer or move with respect to Plaintiff's Complaint, and we will await further order of the Court before filing a motion. Ms. Torres is prepared to provide the Court with any further information requested for its consideration of this application.

Respectfully submitted,

/s/ Bennet J. Moskowitz
Bennet J. Moskowitz

---

[9] Such witnesses include, *inter alia*, Katie Jones, Buckhead Art + Co. (Atlanta, GA), a gallery owner who has sold Ms. Torres' prints; Gerardo Reyes, Ger-Art Gallery and Framing (Atlanta, GA), who has done almost all of Torres' framing and installation; Cynthia Lollis (Atlanta, GA), a former professor at the Savannah College of Art and Design (SCAD) Atlanta, who taught Ms. Torres screen printing and helped weave some of the Accused Works; Sara Blakely (Atlanta, GA), who acquired an Accused Work and; Angela McClard Hunt, CPA (Macon, GA), who prepares Ms. Torres' tax returns.

[10] Unable to afford legal counsel, Ms. Torres is represented by *pro bono* counsel who are also located in Atlanta, Georgia, though she is responsible for costs (*e.g.*, transportation, hotels, meals, etc.) which would be far greater if litigating in New York.

**EXHIBIT A**

