*The Law Office of*

# DAVID C. DEAL

*Copyright and Intellectual Property Law*

P.O. Box No. 1042
CROZET, VIRGINIA 22932

TELEPHONE 434-233-2727
FAX 888-965-8083

DAVIDDEAL.com
DAVID@DAVIDDEAL.com

February 11, 2022

**VIA FedEx**

Hon. P. Kevin Castel
United States District Court
For the Southern District of New York
500 Pearl Street
New York, NY 10007

**Re: 1:21-cv-09597, Creative Photographers, Inc. v. Julie Torres Art, LLC et al**

Dear Judge Castel:

My office represents Creative Photographers, Inc. ("CPI") in the above-referenced matter. Pursuant to Rule 3(A)(iii) of the Court's Individual Practices, we write in response to the February 4, 2022 letter filed by defendants Julie Torres and Julie Torres (together, "Torres") (ECF No. 10).

I. <u>CPI has proper standing to sue</u>

CPI is a photography agency which represents elite group of portrait, lifestyle, beauty, and fashion photographers, including Ruvén Afanador ("Afanador"). Afanador is the author of the "Ruth Bader Ginsburg (RAD09005)," the photograph at issue in this case ("Copyrighted Photograph"). Geoff Katz ("Katz") is the founder and owner of CPI. CPI and Katz are listed under the "Rights and Permissions" section of the Certificate of Registration for Copyrighted Photograph, attached as **Exhibit 1**. Attached as **Exhibit 2** is a letter from Katz attesting to his agreement with Afanador governing Katz's authority to enforce Afanador's copyright infringement matters, including filing suit on Afanador's behalf.

II. <u>Torres' derivative works do not qualify as fair use</u>

As a threshold matter, based on an itemized list of Derivative Works provided by Torres to CPI, there are thirty-two (32) distinct derivative works authored by Torres ("Derivative Works"). Derivative Works include "woven screenprints," "screenprints," and "woven works." The complaint includes Derivative Works which are displayed on Torres' commercial website.

Derivative Works range in size from sixteen by twenty inches (16" x 20") to five feet by seven feet (5' x 7'). Derivative Works range from a single piece to editions of thirty (30). Defendant's assertion in its February 4, 2022 letter that Derivative Works are limited to "intricate weavings of strips of paper with text of quotes from Justice Ginsburg" is categorically false.

The complaint filed in this case lists seventeen (17) of Derivative Works. Although Torres provided CPI with a list of Derivative Works, it did not provide examples of those works not displayed on Torres' commercial website, which make up the seventeen (17) Derivative Works included in Exhibit 2a of CPI's complaint. Therefore, CPI does not possess copies of all thirty-two (32) Derivative Works. If needed, CPI plans to file a letter requesting leave to amend its complaint to include, at minimum, descriptions of all Derivative Works.

For the reasons below, the fair use factors are unambiguously in favor of CPI:

Following the Supreme Court's decision in *Campbell v. Acuff-Rose Music, Inc.*, courts assessments of the first fair use factor have focused chiefly on the degree to which the use is "transformative," i.e., "whether the new work merely supersedes the objects of the original creation, or instead adds something new, with a further purpose or different character, altering the first with new expression, meaning, or message." 510 U.S. at 579, 114 S.Ct. 1164.

Although the most straightforward cases of fair use thus involve a secondary work that comments on the original in some fashion, in *Cariou v. Prince,* this court rejected the proposition a secondary work must comment on the original in order to qualify as fair use. 714 F.3d at 706. However, the alteration of an original work with "new expression, meaning, or message," does not mandate any secondary work that adds a new aesthetic or new expression to its source material is automatically transformative. *The Andy Warhol Found. for Visual Arts v. Goldsmith,* 992 F.3d 99 (2d Cir. 2021).

And as this court and others have repeatedly observed, there exists an entire class of secondary works that add "new expression, meaning, or message" to their source material but are nonetheless specifically excluded from the scope of fair use: derivative works. For example, where a secondary work does not obviously comment on or relate back to the original or use the original for a purpose other than that for which it was created, the bare assertion of a "higher or different artistic use," is insufficient to render a work transformative. *Rogers v. Koons* 960 F.2d 301, 306 (2d Cir. 1992).

Additionally, *Kienitz v. Sconnie Nation LLC* held, "To say that a new use transforms the work is precisely to say that it is derivative and thus, one might suppose, protected under 17 U.S.C. 106(2)."). 766 F.3d 756, 758 (7th Cir. 2014). Most importantly, the secondary work itself must reasonably be perceived as embodying an entirely distinct artistic purpose, one that conveys a "new meaning or message" entirely separate from its source material, and its source material is in service of a "fundamentally different and new" artistic purpose and character, such that the secondary work stands apart from the "raw material" used to create it. *The Andy Warhol Found.*, at 113-4.

In this case, like *Gaylord v. United States*, there is no meaningful dispute that the overarching purpose and function of Copyrighted Photograph and Derivative Works because

they in the "essential sense they are portraits of the same person." 595 F.3d 1364, 1372-73 (Fed. Cir. 2010).

The statutory language of the first factor also specifically directs courts to consider "whether [the] use is of a commercial nature or is for nonprofit educational purposes." 17 U.S.C. 107(1). Torres produced Derivative Works explicitly for commercial gain, and has failed to assert in her letter any public interest purpose.

Although courts are required to consider and weigh the second fair use factor, it "has rarely played a significant role in the determination of a fair use dispute."

Copyrighted Photograph is unquestionably a creative work. The photograph employs careful lighting, framing, texture, color (or lack thereof), in addition to the unseen decisions made by Afanador concerning his management and direction his subject. Copyrighted Photograph is unquestionably a published work, as detailed in CPI's complaint.

In order to assess the third fair use factor, the court considers "'the quantity of the materials used' and 'their quality and importance'" in relation to the original work. *TCA Television*, 839 F.3d at 185. The ultimate question under this factor is whether "the quantity and value of the materials used are reasonable in relation to the purpose of the copying." *Campbell*, at 586.

When analyzing photographs, copyright protection includes the photographer's "posing the subjects, lighting, angle, selection of film and camera, evoking the desired expression, and almost any other variant involved." *Id.* at 307. Again concerning photographs, copyright law ultimately protects the photographer's manifestation of his artistic choices. The U.S. Copyright Act ultimately protects is the image produced in the interval between the shutter opening and closing, or the photograph itself, or "particular expression" of the idea underlying her photograph. *Leibovitz v. Paramount Pictures Corporation*, 137 F.3d 109 (2d Cir. 1998).

Derivative Works unquestionably borrow from Copyrighted Photograph. Torres flattened and added colors to the original image, but her end products are ultimately woven screenprint/screenprint/woven works identifiable from a specific photograph of Ruth Bader Ginsburg, or Copyrighted Photograph. With respect to Torres' claim her works feature "wild, rebellious, casual, scattered, neon colored, animal printed (?), contemporary, light, and ebullient features," one person's "wild and rebellious" is another's "commonplace and predictable." In fact, Torres specifically commented on one of her Derivative Works, stating it was a "traditional screen print." See https://www.wabe.org/podcasts/city-lights/artist-julie-torres/ (2:30-2:40). Torres also states she added a "small sample of some meaningful quotes" to the work after "reading judicial opinions and oral arguments." (3:30-3:45). Wild and rebellious this is not. Ultimately, the determination concerning whether Torres' unauthorized uses of Copyrighted Photograph constitute a "transformation" is a question for the finder of fact in this case and not subject to Torres' subjective opinion or wish.

**Exhibit 3** of this letter includes side by side depictions of a Derivative Work and Copyrighted Photograph. Torres, in addition copying directly from Copyrighted Photograph, makes no changes to the framing and scale of her Derivative Work.

Like The Andy Warhol Found. for Visual Arts, while Torres clearly required a photograph of Ruth Bader Ginsburg to create Derivative Works, Torres to date has offered no reason why she required Copyrighted Photograph. A simple review of Torres's other works displayed on her commercial website reveals she has never herself rendered a likeness of individual but "borrowed" established photographic portraits to form the foundation of her other mixed media works. See www.julietorresart.com, which includes works featuring copied photographs of Jane Goodall, Dolly Parton, and Maya Angelou, respectively.

Fair use is an affirmative defense, and the ultimate burden of proving that secondary use does not compete in the relevant market is appropriately borne by the party asserting the defense: the secondary user. *Campbell*, at 590.

Analysis of the fourth fair use factor requires the court to balance, "the benefit the public will derive if the use is permitted and the personal gain the copyright owner will receive if the use is denied." *Wright v. Warner Books, Inc*., 953 F.2d 731, 739 (2d Cir. 1991).

Such analysis must consider both the primary market for the work and any derivative markets that exist or that its author might reasonably license others to develop, regardless of whether the particular author claiming infringement has elected to develop such markets. See *Salinger v. Colting*, 607 F.3d 68, 74, 83 (2d Cir. 2010) (affirming that fourth factor favored J.D. Salinger in suit over unauthorized sequel to Catcher in the Rye despite the fact that Salinger had publicly disclaimed any intent to author or authorize a sequel, but vacating preliminary injunction on other grounds).

Additionally, the question under this factor is not limited to whether the secondary work harms an existing market for the specific work alleged to have been infringed, but whether "unrestricted and widespread conduct of the sort engaged in by [Torres] would result in a substantially adverse impact on the potential market" for the Copyrighted Photograph. *Campbell*, at 590.

Torres' letter ignores the potential harm to CPI and therefore Afanador's derivative market, which is likewise substantial. CPI is in the business of licensing the copyrighted images of its clients, and in this case, which includes an iconic portrait of Ruth Bader Ginsburg, such market could be significant for decades to come.

Further, the court must consider the impact on this market if the sort of copying in which Torres engaged were to become a widespread practice. As the Second Circuit properly held, such harm is "self-evident." *Warhol*, at 126. Like Goldsmith, the photographer in *Warhol*, there is an existing market to license photographs of iconic individuals, to serve as the basis of the type of stylized, derivative work like Torres' mixed media pieces. "Permitting this use would effectively destroy that broader market, as, if artists 'could use such images for free, there would be little or no reason to pay for [them]." *Quoting Barcroft Media, Ltd. v. Coed Media Grp., LLC*, 297 F. Supp. 3d 339, 355 (S.D.N.Y. 2017).

III. CPI does not oppose transfer to the U.S. District Court for the Northern District of Georgia

CPI agrees this case has yet to progress past a meaningful stage, and supports a quicker adjudication of the merits of this case. Despite strong feelings and support that venue in this case is proper in the U.S. District Court for the Southern District of New York, CPI will not object to Torres' motion to transfer this case to the U.S. District Court for the Northern District of Georgia, if required.

Respectfully submitted,

David C. Deal

**EXHIBIT 1**

Certificate of Registration

SEAL OF THE UNITED STATES COPYRIGHT OFFICE 1870

This Certificate issued under the seal of the Copyright Office in accordance with title 17, *United States Code*, attests that registration has been made for the work identified below. The information on this certificate has been made a part of the Copyright Office records.

Shira Perlmutter

United States Register of Copyrights and Director

Registration Number
**VA 2-252-202**

**Effective Date of Registration:**
February 05, 2021

**Registration Decision Date:**
May 21, 2021

## Supplementary Registration

**Supplement To:** VA0002221803, 2020

## Title

**Title of Work:** Ruth Bader Ginsburg (RAD09005)

## Completion/Publication

**Year of Completion:** 2009
**Date of 1st Publication:** July 20, 2009
**Nation of 1st Publication:** United States

## Author

- **Author:** Ruven Afanador
  **Author Created:** photograph
  **Citizen of:** United States
  **Domiciled in:** United States

## Copyright Claimant

**Copyright Claimant:** Ruven Afanador
420 west 25th Street 7B, New York, NY, 10003, United States

## Rights and Permissions

**Organization Name:** Creative Photographers Inc
**Name:** Geoff Katz
**Email:** geoff@cpi-ny.com
**Telephone:** (212)683-1455
**Address:** 135 East 57th Street 14th Floor
New York, NY 10022 United States

# EXHIBIT 2

## Creative Photographers inc.

Monday Feb 7th 2022

To Whom it may Concern,

I am the founder and owner of Creative Photographers, Inc. ("CPI"). CPI represents numerous well-known and sought-after commercial photographers throughout the world, including Ruvén Afanador ("Afanador").

As part of the representation agreement between Afanador and CPI, Afanador has authorized CPI to engage in the prosecution of matters of copyright infringement matters concerning Afanador's copyrighted photographs, including contacting parties which have engaged in the unauthorized use of Afanador's photographs, negotiating settlement agreements concerning such unauthorized use, as well as filing suit for copyright infringement in U.S. District Court on his behalf.

Thank you,

Geoffrey Katz
Co Owner / Founder
Creative Photographers Inc.

CPi • 420 East 61st Street• 28E • New York, NY 10065 • T.(212) 683-1455

**EXHIBIT 3**



